## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **DEANNA M. MADOUX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-18-** 137-F |
| | ) | |
| 1. **REDROCK MORTGAGE,** | ) | |
| **a trade name for AMERICAN** | ) | |
| **SOUTHWEST MORTGAGE** | ) | |
| **CORP., and** | ) | |
| 2. **REDROCK MORTGAGE,** | ) | |
| **a trade name for AMERICAN** | ) | |
| **SOUTHWEST MORTGAGE** | ) | |
| **FUNDING CORP.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | **ATTORNEY LIEN CLAIMED** |

## COMPLAINT[1]

**COMES NOW** the Plaintiff, DeAnna M. Madoux, and for her Complaint against Defendants, RedRock Mortgage, a trade name fore American Southwest Mortgage Corp. and RedRock Mortgage, a trade name fore American Southwest Mortgage Funding Corp. (collectively "Defendants"), alleges and states as follows:

## PARTIES

1.     Plaintiff, DeAnna M. Madoux, is an adult female, residing in Oklahoma County, Oklahoma.

2.     Defendants are:

(a)     RedRock Mortgage, a trade name for American Southwest Mortgage Corp., an entity doing business in and around Oklahoma County, Oklahoma; and

---

[1]Plaintiff is filing a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"), based on violations of *inter alia* the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA") and Title VII.  As such, Plaintiff anticipates filing an Amended Complaint once her claims pending at the EEOC have been fully exhausted.

(b)     RedRock Mortgage, a trade name for American Southwest Mortgage Funding Corp., an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendants.  Plaintiff's claims are based on (a) violations of the Fair Labor Standards Act ("FLSA"); (b) violations the Oklahoma Protection of Labor Act ("OPLA"), Okla. Stat. tit. 40 § 160, *et seq.*; (c) failure to pay equal wages in violation of the Equal Pay Act; and (d) violation of the Family Medical Leave Act.

4.     Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claim which arises out of the same core of operative facts pursuant to 28 U.S.C. § 1367(a).

5.     All of the actions complained of herein occurred in Oklahoma County, Oklahoma.  Defendants are located in and/or doing business in such county and may be served in said county.  Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6.     Plaintiff began her employment with Defendants on or about January 4, 2015.  She was hired as a Loan Officer Assistant, reporting directly to Loan Officer Shelby Weston, a male.  She held this position until her wrongful termination on or about November 6, 2017.

7.     Throughout her employment, Plaintiff satisfactorily performed her job.  She received a performance bonus and was consistently complimented on her work.  At no time prior to her termination did she receive any discipline.

8.     Despite her good work performance, Office Manager Kevin Hudson fired

2

Plaintiff on or about November 6, 2017 – just three months after Plaintiff began requesting medical leave.

9.      More particularly, beginning in or around August 2017, Plaintiff began suffering from severe anemia, vertigo, fatigue and nausea, which required her to seek medical treatment.

10.      In or around late-September 2017, after Plaintiff had only missed a few partial days of work because of her medical conditions, Weston called Plaintiff into a meeting, inquiring about the status of her medical conditions.

11.      During the meeting, Plaintiff explained the limitations imposed by her impairments and proposed taking leave while she sought treatment and further diagnosis of her conditions.  However, Weston told Plaintiff that it was not necessary that she take leave, stating Plaintiff was "doing a great job."

12.      Days later, Human Resources Representative Kendra McWilliams provided Plaintiff with FMLA paperwork.  She told Plaintiff to have her physician complete and return the paperwork.  However, McWilliams did not give Plaintiff a deadline to return the paperwork.

13.      Upon receipt of the FMLA paperwork, Plaintiff quickly provided the same to her physician.  She advised McWilliams and Hudson of this and kept them informed of her efforts to have the FMLA paperwork completed, including providing a fax confirmation sheet evidencing that she sent the FMLA paperwork to her physician for completion.

14.      In the midst of awaiting completion of her FMLA paperwork, Plaintiff was periodically required to come in late for work and/or to take time off work to attend doctor's appointments because of her conditions.  However, Plaintiff was only required to miss partial days of work on a handful of occasions.  She made up her time by staying late or coming in

early the following day.  And, she provided doctor's notes related to her medical appointments.

15.    On occasion, Plaintiff also asked that she be allowed to work from home because of her conditions.  By way of example, in or around September 2017, due to her impaired vision caused by her medical conditions, Plaintiff fractured her foot.  Her physician ordered she keep her foot elevated.  Thus, she asked that she be allowed to work from home. However, Weston demanded that Plaintiff come to the office.  This was so despite the fact that Plaintiff could perform her work from home and often did work from home on weekends and outside regular business hours.

16.    Plaintiff was then required to be absent from work from on or about Monday, October 30, 2017, through Wednesday, November 1, 2017.  She was out of state the preceding weekend (i.e., on October 28 and October 29) and began suffering from extreme dizziness and vertigo, making it unsafe for her to drive.  As such, Plaintiff contacted Weston early Monday, October 30, 2017, and advised that she was unable to work that day.

17.    That evening, without inquiring about Plaintiff's well-being, Weston contacted Plaintiff, unsympathetically demanding to know whether she would be present for work the next day (i.e., Tuesday, October 31, 2017).  Plaintiff explained that due to her conditions, she was unable to drive.  And, as a result, she was required to be absent the following two days, i.e., October 31 and November 1, 2017.

18.    Plaintiff returned to work on Thursday, November 2, 2017.  That day, a meeting was held and employees were told the company had been acquired by another entity. However, employees were informed that they should not anticipate any layoffs.

19.    Plaintiff then had a physician's appointment to undergo a balance test on Friday, November 3, 2017.  She intended to return to work that day following her doctor's

appointment, but suddenly lost vision in the midst of the testing, requiring she seek urgent care from an optometrist.  As such, Plaintiff advised that she would not be able to return to work on Friday, November 3, 2017.

20.     Plaintiff texted Weston and Hudson copies of doctors' notes, showing that she had suddenly lost vision and that it was necessary that she seek immediate medical treatment. Yet, Weston callously responded, asking what time Plaintiff would be at work, to which Plaintiff replied that she was unable to report to work that day (i.e., Friday, November 3) due to her medical conditions.

21.     The next work day, i.e., on or about November 6, 2017, Hudson called Plaintiff to his office shortly after she arrived for work.  Hudson said that he, Weston and Red Rock President Kelly Griggs met on Friday, November 3, 2017, and decided to terminate her employment.

22.     Hudson provided Plaintiff with a letter confirming her termination.  However, the letter did not state any reason for her termination.  As such, Plaintiff, inquired as to why she was being fired.

23.     Hudson claimed her termination was not his decision.  Rather, he said the decision was made by Griggs and Weston.

24.     Hudson did not specifically state a reason for the termination decision, but said Plaintiff had not returned her FMLA paperwork and that she missed three days the week before.  However, Plaintiff was not given a deadline to return her FMLA paperwork.  At no time, did anyone ask her for her FMLA paperwork.  And, she had accrued leave to cover her absences.

25.     Plaintiff was also discriminated against with regard to her pay, in that, she was paid less than her similarly-situated male co-workers, including, but not limited to Loan

Officer Assistant David Beldin.  This was so despite the fact that Plaintiff and Beldin (as well as other male employees) performed substantially equal work, requiring equal skill, effort and responsibility, and their jobs were performed under similar working conditions.

26.     More particularly, in or around mid-2016, Weston hired Beldin as a Loan Officer Assistant.  Like Plaintiff, Beldin reported directly to Weston and performed the same job duties as Plaintiff.  In fact, Plaintiff was required to train Beldin to perform his job.  Yet, Plaintiff learned that Beldin was paid significantly more than her.

27.     Further, Defendant failed to pay Plaintiff regular and overtime compensation for hours she worked in excess of forty (40) hours per workweek.

28.     As a Loan Officer Assistant, Plaintiff primarily performed administrative tasks, including, but not limited to contacting customers to gather documents needed to process their loans, communicating with realtors about the status of the loan process and other duties as assigned by Weston.

29.     Plaintiff was not authorized or permitted to exercise discretion or independent judgment in performing her primary job duties.  Rather, Plaintiff completed tasks as directed by Weston.

30.     During her employment, Plaintiff was regularly required to work more than forty (40) hours per workweek.

31.     Defendants' regular business hours were 8:30 a.m. to 5:30 p.m., Monday through Friday.  However, in addition to working forty (40) hours per workweek during Defendants' regular business hours, Plaintiff was regularly required to work weekends, come in early (before 8:30 a.m.) and stay late (after 5:30 p.m.).  Such hours were unrelated to her making up work time missed beginning in or around August 2017 to attend doctor's appointments.

32.     Plaintiff was required to clock-in and out throughout her employment. However, when Plaintiff was hired, Weston told Plaintiff that she was a salaried, exempt employee, that she would only be paid for forty (40) hours per workweek and discouraged Plaintiff from accurately recording her time.

33.     Weston told Plaintiff that although she would be required to work more than forty (40) hours per workweek, i.e., overtime, she would not be paid overtime compensation. Rather, Weston said he would personally give Plaintiff cash bonuses on occasion to compensate Plaintiff for the excess hours that he required her to work.

34.     Based on Weston's instruction, from the time Plaintiff began her employment through in or around mid-2016, Plaintiff clocked-in and out only during regular business hours.

35.     However, during this period (i.e., from Plaintiff's date of hire until in or around mid-2016), Plaintiff was regularly required to work fifty (50) or more hours per workweek.

36.     Defendants' management staff, including but not limited to Weston, were aware Plaintiff worked more than forty (40) hours per workweek, i.e., overtime hours. However, Defendants failed to pay Plaintiff regular or overtime compensation for the hours she worked in excess of forty (40) hours per week. And, Weston did not personally pay Plaintiff cash bonuses as he promised.

37.     In or around mid-2016, Lisa Waters, who was responsible for payroll, provided Plaintiff with an employment contract, which reflected Plaintiff was being designated as an hourly employee.

38.     At or around this time, Weston hired Beldin.  And, Plaintiff was permitted to begin accurately recording her in-office work hours at or around this time.

39.     Hence, from in or around mid-2016 until her termination on or about

November 6, 2017, Plaintiff was paid overtime compensation for hours she worked in the office in excess of forty (40) hours per week. However, during this period, Plaintiff was also required to work overtime hours (i.e., over 40 hours per workweek) outside the office on evenings and weekends (beyond that which she worked to make up time she missed to attend doctor's appointments).

40.     Defendants' management staff, including Weston, were aware Plaintiff worked overtime hours outside the office. However, Defendants failed to pay Plaintiff regular or overtime compensation for said hours.

41.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described below.

### COUNT I: FLSA Violations

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42.     The acts described above constitute a violation of the Fair Labor Standards Act for failure to pay regular and overtime wages to Plaintiff.

43.     The FLSA requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per week.

44.     At all relevant times, Defendants have been and continue to be an "employer" engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203. Plaintiff was an "employee" within the meaning of the FLSA. And, at all relevant times, Defendants had gross operating revenue in excess of $500,000.

45.     At no time during her employment was Plaintiff employed in a bona fide executive, professional, administrative, outside sales or other capacity exempting her from the overtime provisions of the FLSA. Defendants improperly designated Plaintiff as an

exempt employee from her date of hire, on  or about January 5, 2015, through in or around mid-2016.  And, Defendants continued to fail to pay Plaintiff overtime hours she worked thereafter (until her termination on or about November 6, 2017),

46.    Defendants required Plaintiff, a non-exempt employee, to routinely work more than forty (40) hours per week without regular or overtime compensation.

47.    Defendants' failure to provide Plaintiff regular compensation, as well as overtime compensation at a rate not less than one and one-half times his regular rate for hours worked over forty (40) hours in a workweek constitutes a violation of the FLSA, 29 U.S.C. § 207.

48.    Defendants' violations of the FLSA were knowing and willful, in that, Defendants knew, or showed reckless disregard for, the fact that they failed to pay Plaintiff regular and overtime compensation for the hours Plaintiff worked in excess of forty (40) hours per week.

49.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

## COUNT II: Violation of Okla. Stat. tit. 40, § 165.2

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

50.    The acts described above constitute a violation of Oklahoma state law, Okla. Stat. tit. 40, § 165.2.

51.    Okla. Stat. tit. 40, § 165.2 requires employers to pay employees all wages due, including regular and overtime wages, at least twice each calendar month.

52.    Defendants required Plaintiff, a non-exempt employee, to routinely work more

than forty (40) hours per week without paying Plaintiff regular or overtime compensation for said hours.

53.    As such, Plaintiff is entitled to all damages provided for by law, including liquidated damages, attorneys' fees and costs.

## COUNT III: FMLA Violations

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

54.    The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family Medical Leave Act ("FMLA").

55.    Plaintiff was entitled to medical leave because she worked for Defendants, entities with more than 50 employees within a 75 mile radius of Plaintiff's worksite, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

56.    Plaintiff suffered from a serious health condition, as set forth above, requiring continuing medical treatment by a medical provider.

57.    Defendants interfered with Plaintiff's rights under the FMLA by contacting Plaintiff and demanding she return to work during FMLA-covered leave time.

58.    Defendants also retaliated against Plaintiff for her use of FMLA leave by terminating Plaintiff.  Defendants' actions were taken in response to Plaintiff's exercise of her rights under the FMLA.

59.    As set forth herein, Defendants' actions were in willful violation of the law. Defendants were aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

60.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendants' violation of the FMLA, attorneys' fees and costs.

## COUNT IV: Equal Pay Act Violation

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

61.     The acts described above constitute violations of the Equal Pay Act.

62.     Defendants' paid different wages to employees of the opposite sex, i.e., Plaintiff, a female, in comparison with her male co-workers.

63.     Plaintiff performed equal work on jobs requiring equal skill, effort and responsibility as her male counterparts.

64.     Plaintiff's job and those of her similarly-situated male counterparts were performed under similar working conditions.

65.     As the direct and proximate result of Defendants' actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow.   Based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendants and award compensatory damages, lost wages, liquidated damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

11

Respectfully submitted this <u>13th</u> day of February, 2018.

s/Jana B. Leonard
**JANA B. LEONARD, OBA #17844**
**LAUREN W. JOHNSTON, OBA #22341**
**SHANNON C. HAUPT, OBA #18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**
**johnstonlw@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**